**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| TRESSA R. GLOVER-PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:05-1207-JFA-BM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| ORANGEBURG CONSOLIDATED | ) | |
| SCHOOL DISTRICT 5 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case has been filed by the Plaintiff pursuant to, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq.. Plaintiff was originally represented by counsel in this case, but is now proceeding pro se.

Plaintiff filed a two page motion for summary judgment on September 20, 2006, but did not attach any exhibits to this motion. The Defendant thereafter filed its own motion for summary judgment on November 10, 2006. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 22, 2006, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted. Plaintiff thereafter filed a response on January 4, 2007 and another response on January 8, 2007 (both in letter form). Defendant filed a reply memorandum on January 25, 2007. These motions are now before



the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in her Complaint that she is a former employee of the Defendant School District, and that during the course of her employment she was subjected to verbal and physical sexual harassment by her supervisor, Russell Zimmerman. Plaintiff further alleges that Zimmerman's conduct created a hostile work environment, and that her complaints about Zimmerman's conduct to the School Board were to no avail. Plaintiff also alleges that she suffers from an "organic psychosis", that because of this condition she is perceived by the School District as being disabled, but that even though she was able to perform the responsibilities of her job, the School District refused to allow her to return to work or to provide her with a reasonable accommodation. Plaintiff alleges that this led to her being placed on unpaid leave, which was not only discrimination in violation of the ADA, but was also retaliation for her having filed her sexual harassment claims against Zimmerman.

Plaintiff sets forth nine (9) causes of action in her Complaint, as follows: sexual harassment in violation of Title VII (first cause of action); gross negligence resulting in the infliction of severe emotional distress, mental anguish and humiliation (second cause of action); breach of contract (third cause of action); tortuous interference with contract (fourth cause of action); intentional infliction of humiliation and severe emotional distress (fifth cause of action); intentional infliction of severe physical distress and injury (sixth cause of action); intentional infliction of severe

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

2



mental anguish (seventh cause of action); violation of the ADA due to failure to allow reasonable accommodation (eighth cause of action); and refusal to allow Plaintiff to return to her job in violation of the ADA (ninth cause of action). See generally, Complaint.

The only evidence submitted in the case has been submitted by the Defendant. This evidence shows that Plaintiff was hired by the Defendant in 1997 to be Manager of Information Technology within the Department of Information Technology. Plaintiff's title was subsequently changed in 2001 to Applications Analyst, although the terms and benefits of her employment remained the same. See Defendant's Exhibit A (Smoak Affidavit); see also Defendant's Exhibit B (Plaintiff's Deposition), pp. 40-42. Plaintiff's supervisor during the relevant time period was Russell Zimmerman.

Beginning in the spring of 2003, Plaintiff began having conflicts with Zimmerman as well as with co-workers. Plaintiff accused Zimmerman and her co-workers of "sabotaging" her computer programs. See generally, Defendant's Exhibit C (Ford Affidavit). Plaintiff also testified that she believed Zimmerman had intentionally exposed her to toxic chemicals by dripping them onto her through holes in the basement ceiling. Defendant's Exhibit B, pp. 66-68, 94. An investigation of Plaintiff's claim found no evidence of chemicals being present in Plaintiff's work area. Nevertheless, Plaintiff believed that she suffered an organic brain injury due to this alleged chemical exposure, and filed a worker's compensation claim, which was denied. See Defendant's Exhibits A, E.

On June 3, 2003, District employee Susan Yoakum reported that Plaintiff was asking her if she could smell a rancid, chemical odor (which Yoakum could not smell), and that Plaintiff had shown her papers enclosed in plastic bags that Plaintiff claimed had been sprayed with

3



chemicals. Yoakum was concerned and disturbed about Plaintiff's behavior. The following day, June 4, 2003, Assistant Superintendent Nancy Ford met with Orangeburg County Sheriff's deputies concerning numerous incident reports that had been filed by the Plaintiff, including claims that District employees had been stealing her personal property, tampering with her car, and that she was being subjected to a "rancid odor." Ford attests that none of these reports were verified, and that she began to grow concerned about Plaintiff's mental health. Defendant's Exhibit C.

When Plaintiff continued to complain about chemical odors, she was placed on administrative leave on June 12, 2003 and an investigation was conducted by DHEC. Orangeburg Superintendent Melvin Smoak attests that neither DHEC, nor Environmental Studies and Engineering (a company which was hired to perform air monitoring testing in the Plaintiff's office), found any evidence of harmful chemicals or other agents in the air. Nevertheless, Smoak authorized the relocation of Plaintiff's office to the Environmental Services Building, and Plaintiff was advised that she could return to work on July 7, 2003 at her new office location. Defendant's Exhibit A.

After returning to work, Plaintiff continued to report that she smelled the same unusual, rancid odor in her new office. Plaintiff also began complaining about insects biting her legs, although neither Ford nor another District employee, Dr. Charlie Spell, could detect any evidence of insects in her office. Ford attests that, nevertheless, the District had Plaintiff's office cleaned and treated by an exterminator. Defendant's Exhibit C.

The evidence submitted to the Court also reflects that in early 2003, Plaintiff had mentioned to Spell (then the Assistance Superintendent for Human Resources) that Zimmerman had made a pass at her. The Plaintiff did not, however, file a formal complaint with the District, nor did she provide any other information to Spell about this alleged incident. Defendant's Exhibit A. By

4



the spring of 2004, Plaintiff was engaging in unusual behavior, such as wearing a surgical mask around the office and repeatedly taping plastic sheeting to her office ceiling. She also continued to have disputes with co-workers, accusing them of tampering with her car air conditioning system, manipulating traffic patterns to cause traffic jams, and sprinkling chemicals on her lawn in an effort to kill her. See Defendant's Exhibits A, C and G.

Plaintiff was also incurring absences for treatment of her "organic brain injury", and Smoak determined that her excessive and unexplained absences coupled with her bizarre behavior was interfering with her ability to perform her job. See Defendant's Exhibits A and H. The Defendant asked Plaintiff to provide statements from her treating physicians that she was both able to perform her job responsibilities and that she did not present a threat of harm to herself or others. Id. When Plaintiff failed to produce these medical statements, Smoak placed her on unpaid leave on January 7, 2005 until the information was received. Plaintiff was instructed to provide the required medical information by no later than January 21, 2005. See Defendant's Exhibits A & I.

Plaintiff thereafter provided a letter from Dr. Randolph Scott of the Scott Psychiatric Institute, in which Dr. Scott stated that they had been treating the Plaintiff with "psychopharmacological therapy" since October 2004. Dr. Scott further stated:

> [Plaintiff] has had some positive response to treatment but still require[s] intensive treatment. Much of her behaviors presented are directly related to her diagnosis. She cannot be "close" spaces or cacophonous sounds without further exacerbating her medical condition.

See Defendant's Exhibit J.

Smoak attests that this information did not respond to the District's request with regard to Plaintiff's ability to perform her job responsibilities or whether she presented a threat of harm to herself or others, so Plaintiff was given until February 11, 2005 to provide this information. See Defendant's



Exhibits A and K.

Smoak attests that Plaintiff thereafter submitted a number of documents to the District, none of which indicated whether Plaintiff could perform her job duties, or whether she presented a threat of harm to herself or others. Plaintiff did agree, after consultation with counsel, to undergo a psychiatric examination, and although she refused to see the original psychiatrist agreed upon, she later saw Dr. Kevin Crebbs, who provided a letter to the District on or about April 19, 2005. Dr. Crebbs reported that he had evaluated the Plaintiff on April 18, 2005, that he did not feel she had any psychiatric diagnosis currently, and that he saw no reason why Plaintiff could not return to work. See Defendant's Exhibits A and L. The Defendant did not believe this letter addressed whether Plaintiff was a threat of harm to herself or others, and advised Plaintiff through her attorney that it would need such a statement before she could return to work. However, by May 9, 2005, the Defendant had never received any such statement. See Defendant's Exhibits A and C. Smoak attests that he then terminated Plaintiff's employment on May 9, 2005 based on her erratic and bizarre behavior, her numerous absences, her repeated and unfounded accusations of criminal activities of co-workers, her refusal to undergo a fitness for duty examination or to provide a medical statement that she did not present a threat of harm to herself or others, and her failure to satisfactorily perform her job duties. See Defendant's Exhibits A and C. See also Defendant's Exhibits D, I, and M (Employment Contract).

The evidence provided to the Court further reflects that, prior to Plaintiff's termination, she had filed an administrative charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) against the Defendant on July 22, 2004, alleging sex discrimination and retaliation due to harassment, intimidation and discriminatory terms and

6



conditions of employment.  Defendant's Exhibit N.  A right to sue letter was issued with respect to this charge on January 25, 2005.

The evidence further reflects that Plaintiff filed a second charge of discrimination with the EEOC on February 3, 2005, this time alleging disability discrimination as well as retaliation. Defendant's Exhibit O.  A right to sue letter with respect to this charge was issued on May 9, 2005.

Plaintiff thereafter filed this civil suit in United States District Court.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

7



**I.**

**(Title VII Claim)**

Plaintiff's claim under Title VII is that she was sexually harassed, creating a hostile work environment for her. See Complaint (first cause of action). While Plaintiff also states in the narrative of her Complaint that she was retaliated against for having filed a sexual harassment claim against Zimmerman, that is not one of her actual nine causes of action. In any event, even assuming that both of these claims, including a retaliation claim, had been asserted by the Plaintiff under Title VII, she has failed to present evidence sufficient to give rise to a genuine issue of fact as to whether she was subjected to a sexually hostile work environment, or retaliated against, to survive summary judgment.

First, to establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her sex; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999). Plaintiff has failed to present any evidence to show that she was subjected to unwelcome conduct at her workplace.[2] Conversely, Defendant's evidence reflects that none of Plaintiff's claims concerning harassment by either

---

[2]As previously noted, Plaintiff has presented *no* evidence in this case in support of her claims. Both Plaintiff's own motion for summary judgment, as well as her two memoranda filed in response to the Defendant's motion, are in letter form, and contain no evidentiary attachments.

8



Zimmerman or any of her other co-workers was ever verified. This Court is not required to accept Plaintiff's bald, conclusory and unsubstantiated allegations of harassment as set forth in her Complaint, and these claims are therefore not sufficient to survive summary judgment. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

There being no evidence to support Plaintiff's claim that she was subjected to unwelcome conduct in her workplace, the evidence is also obviously insufficient to show that Plaintiff was subjected to any conduct severe or pervasive enough to alter her condition of employment and create an abusive work environment. Even if the Court were to fully credit for purposes of summary judgment Plaintiff's claim that Zimmerman made a "pass" at her in early 2003, such conduct would not amount to severe or pervasive conduct based on her sex sufficient to create an abusive work environment. Guidry v. Zale Corp., 969 F.Supp. 988, 990 (M.D.La. 1997) [isolated comments do not constitute severe or pervasive conduct]; Cram v. Lamson & Sessions, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to support a hostile environment claim]; cf. Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) [finding that a male co-worker's conduct consisting of several incidents of unwanted touching, attempts to kiss, placing "I love you" signs in work area, and asking a female employee out on dates did not create a hostile work environment.]; see Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754

9



(4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."]. Therefore, Plaintiff's hostile work environment claim fails for lack of evidentiary support, and should be dismissed.

With respect to Plaintiff's retaliation claim (assuming such a claim has been properly asserted in this case), Plaintiff has again failed to provide any evidentiary support sufficient to survive summary judgment. Pursuant to 42 U.S.C. § 2000e(3)(a),

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under this statute are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its



actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. Id.

Considered under this standard, and even assuming for purposes of summary judgment that Plaintiff's comment to Assistant Superintendent Spell in early 2003 that Zimmerman had made a pass at her was sufficient to constitute protected activity,[3] there is no evidence to show that Plaintiff having been placed on unpaid leave and ultimately terminated in May 2005 had anything whatsoever to do with this complaint. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998)[conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]. Plaintiff has presented no evidence to show that Smoak had any knowledge that Plaintiff had complained about Zimmerman's conduct, and in any event her unpaid leave and termination occurred some *two years* after Plaintiff's comment to Spell.

Hence, there is no evidence whatsoever to support a finding, or to raise a genuine issue of fact as to whether, either Smoak or Ellis had any retaliatory animus towards the Plaintiff, and no evidence establishes a causal connection between Plaintiff having engaged in any protected activity and any disciplinary action taken against her, including her termination. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; *cf.* Rudolph v. Hechinger, 884 F.Supp. 184, 188

---

[3]As Plaintiff did not list a Title VII retaliation claim among her nine causes of action, the Defendant has not even addressed this issue.



(D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977). Defendant's motion for summary judgment with regard to Plaintiff's Title VII claim should be granted.

## II.

## (ADA Claims)

Plaintiff's eighth and ninth causes of action assert violations of the ADA. In order to assert a claim under the ADA, Plaintiff must present evidence to show that 1) she is a qualified person with a disability under the ADA, and 2) that the defendant is subject to suit under that statute. 42 U.S.C. § 12112(a); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002); Tyndall v. National Education Centers, 31 F.3d 209, 212 (4th Cir. 1994); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act].[4]

Defendant does not contest that it is subject to suit under the ADA. With regard to whether Plaintiff is a qualified person with a disability so as to establish a violation of the ADA by the Defendant, three criteria must be met: first, the Plaintiff must have a "disability"; second, the Plaintiff must have been "qualified" for the job in question; and third, the Plaintiff's adverse employment action must constitute unlawful "discrimination" based on her disability. E.E.O.C. v.

---

[4] While some cited cases deal with the Rehabilitation Act rather than the ADA, the standards are the same. Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act in this case....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."]; Hooven-Lewis v. Caldera, 249 F.3d at 268.

12



Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Tyndall, 31 F.3d at 212. The term "disability" is defined as a) a physical or mental impairment that substantially limits one or more of the major life activities[5] of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Pollard, 281 F.3d at 467.

The issue before this Court is whether Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether her alleged impairment (organic brain injury) substantially limited a major life activity, whether there is any record of such a substantially limiting impairment, or whether the Defendant regarded her as having such an impairment. Plaintiff does not specifically identify one particular major life activity in which she is substantially limited, but instead talks in her Complaint about how the Defendant "perceived" her as being disabled and refused to accommodate her. See MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996), citing Dutcher v. Ingalls Shipbuilding, 53 F.3d at 727 [holding that the Plaintiff "might have qualified as disabled under the ADA if he could have provided sufficient summary judgment evidence that he was regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."]; Rhodes v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001). However, a review of her testimony and the exhibits filed with the Court shows that Plaintiff has failed to meet her burden of creating a genuine issue of fact as to

---

[5]A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working. Appendix to 29 C.F.R. § 1630.2(I); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).

13



whether she was subjected to discrimination under the ADA.

Defendant's evidence reflects that Plaintiff was placed on unpaid leave and then terminated in May 2005 due to her erratic and bizarre behavior over the preceding months and her failure to provide a medical statement that she did not present a threat of harm to herself or others, as well as her failure to satisfactorily perform her job duties. Defendant's Exhibits A, G, H, I and K. This evidence does not, however, show that the Defendant believed Plaintiff was suffering from a "disability" as that term is defined under the ADA. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir. 1997) ["[T]he term 'disability' does not include temporary medical conditions, even if those conditions required extended leaves of absence from work"], abrogated on other grounds by, Baird v. Rose, supra. Plaintiff herself does not indicate in her Complaint that she believed her condition was disabling, and the mere fact that the Defendant asked Plaintiff to obtain physician statements or otherwise document her complaints does not constitute evidence that the Defendant regarded Plaintiff as being disabled. *Cf.* Sullivan v. River Valley School District, 197 F.3d 804, 810 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) [Affirming grant of summary judgment to an employer who required the plaintiff employee to submit to mental and physical examinations to determine his fitness to continue as a teacher: "Given that an employer needs to be able to determine the cause of an employee's aberrant behavior, [the fact that examinations were required] is not enough to suggest that the employee is regarded as...disabled...."]; Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-471 (4th Cir. 2002) [temporary impairments usually do not fall within the ADA's definition of disability].

Given the unusual and bizarre behavior documented in the evidence presented, the Defendant was certainly within its rights to request a statement from Plaintiff's physicians as to

14



whether she constituted a danger to herself or others before allowing her to return to work. Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998) ["Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims under § 12112(a) and 13102(c)."] (citing Johnson v. Boardman Petroleum, 923 F.Supp. 1563, 1568 (S.D.Ga. 1996) [offer of a leave of absence showed concern for employee's well being, not treatment of the employee as disabled.]); Sullivan, 197 F.3d at 810. That Plaintiff was ultimately discharged because of her repeated failure to comply with this request does not mean that her termination violated the dictates of the ADA. Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief under the ADA...."]; Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; see Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own belief and conclusory statements that he had been discriminated against based on a disability is not sufficient to raise reasonable inference of unlawful discrimination]. Therefore, the Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### III.

### (Remaining State Law Claims)

With respect to Plaintiff's remaining causes of action, all of which set forth state law claims, if the Court adopts the recommendation herein with regard to Plaintiff's federal claims, these pendant state law claims will be the only claims remaining in this lawsuit. Under the applicable

15



caselaw, when federal claims presented in a case are dismissed, any remaining state law claims should be dismissed, without prejudice, for resolution in state court under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). Additionally, if summary judgment on these claims were to be denied, it would be much more appropriate for these claims to be tried by the state courts. See also Jinks v. Richland county, 538 U.S. 456 (2003) [State statute of limitations tolled for state claims in federal lawsuit dismissed without prejudice].

## **Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**. It is further recommended that the Defendant's motion for summary judgment be **granted** with respect to Plaintiff's first, eighth and ninth causes of action, and that those claims be **dismissed.** Plaintiff's remaining state law claims should be **dismissed**, without prejudice, so that she may pursue these claims in state court, if she so chooses.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

May 7, 2007

16



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

